IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:09CV31-V

| | |
|---|---|
| **WESLEY MARTIN BREWINGTON,** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Memorandum and Order |
| ) | |
| **GETRAG CORPORATION,** ) | |
| **Defendant.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Defendant Getrag Corporation's Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as well as all related memoranda in support and in opposition. (Documents ##5,6,10,11)

## I. Background

Plaintiff Wesley Martin Brewington ("Brewington") claims he was fired from his previous employment with Getrag Corporation ("Getrag") in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*. (the "ADA"). In February 2009, Brewington commenced this action in Catawba County, North Carolina Superior Court. *See Brewington v. Getrag Corporation*, Catawba County Superior Court, Civil Case No.: 09WS688. Getrag removed the case to federal district court on March 25, 2009. (Document #1)

Taking the facts as pled by Plaintiff, the non-moving party, as true:

- Brewington performed temporary work for Getrag through ManPower from April 14, 2003 through July 11, 2004 (Compl. ¶3);

- In March 2003, Brewington was diagnosed with sleep apnea (Compl. ¶5);

- Brewington shared his sleep apnea diagnosis with Getrag, and his Getrag supervisor

- (John Avery) *before* eventually being hired as a full-time employee (Compl. ¶5);

- In April 2004, while still working at Getrag in a temporary capacity, Brewington blacked out at work "due to sleep apnea" and emergency medical personnel took Brewington to Catawba Memorial Hospital (Compl. ¶9);

- On July 14, 2004, Brewington was hired as a full-time employee with Getrag (Compl. ¶4);

- Brewington was permitted to work overtime (Compl. ¶4,7);

- In July 2007, Brewington, "along with fellow coworkers, was sitting [d]own waiting on another coworker to move out the wrong axles [a]nd move in the ones needed for the day's shipment so [Brewington] [c]ould begin his workday. Another supervisor from another dept. [w]alked behind [Plaintiff] and said "shouldn't you be working rather [t]han sleeping?". [Plaintiff] answered "I'm not asleep." (Compl. ¶14)

- Brewington was terminated at 2:00 pm the same day (Compl. ¶15);

- Brewington's supervisor, John Avery, told Brewington that "the company was [g]rowing and they were making an example of the [Plaintiff]" (Compl. ¶15);

- Brewington filed a complaint with the Equal Opportunity Commission ("EEOC") on November 2007 (Compl. ¶18); and

- In February 2009, Brewington "filed appeal" with the EEOC and was eventually issued a right-to-sue letter (Compl. ¶19 / Exh. 1).

Getrag moved to dismiss Brewington's Complaint pursuant to Rule 12(b)(6) on the following bases: 1) Plaintiff has not alleged facts which show he was disabled for purposes of the ADA at the time of his termination; 2) Plaintiff fails to allege that Getrag terminated him because of a disability; and 3) Plaintiff does not allege that he was substantially limited in a major life activity because of

mental or physical impairment.

The Court directed Brewington to respond to Getrag's motion.[1] (Document #9) Plaintiff filed a written response denying that he was asleep on the job the day he was terminated and claiming that the jurisdictional admissions of Getrag amount to a concession that Brewington has stated a cause of action sufficient to survive Rule 12(b)(6) scrutiny. (Pl.'s Resp. in Opp'n, 2)

In subsequent *pro se* filings, Brewington has attempted to supplement the factual allegations within his Complaint to include updates on his asserted disability. Brewington claims to have been diagnosed with other medical conditions, including diabetes and high blood pressure, as a result of his sleep apnea.[2]

## II.  Standard / Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  While a complaint need not contain detailed factual allegations in order to survive a 12(b)(6) motion, the plaintiff must plead enough to give the defendant "fair notice" of the claim and "the grounds upon which it rests . . . ."  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (*quoting* Conley v. Gibson, 355 U.S. 41, 47 (1957)). As the Supreme Court explained in Twombly, a complaint survives Rule 12(b)(6) if it alleges "enough facts to state a claim that is plausible on its face." Id. at 1974; St.

---

[1] Brewington was advised that his Complaint was subject to summary dismissal as a matter of law and that the Defendant's Motion to Dismiss may be converted to a Motion for Summary Judgment pursuant to Rule 56. See Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

[2] Much of this new information is not relevant to the period of time preceding Getrag's termination of Brewington. See Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 470 n. 3 (4th Cir.2002) (date of the adverse employment decision is the relevant date for determining disability) (*internal citations omitted*).  In any event, Brewington fails to connect any of his random factual assertions or explain why he contends he is entitled to protection under the ADA.

Germain v. Howard, 2009 WL 117944, *2 n. 2 (5th Cir. 2009) ("plausibility standard" articulated in *Twombly*); Blackburn v. Calhoun, 2008 WL 850191, *3 (N.D. Ala.)) (*Twombly* retired that "no set of facts" standard). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969.

It is well established that when conducting a 12(b)(6) analysis, the court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (*citing* Twombly, 127 S.Ct. at 1965); G.E. Inv. Private Placement v. Parker, 247 F.3d 543, 548 (4th Cir. 2001). However, "conclusory allegations and unwarranted deductions of fact are not admitted as true . . . ." Blackburn, 2008 WL 850191, *3 (*internal citations omitted*). A plaintiff must do more than allege "a legal conclusion couched as a factual allegation." Twombly, 127 S.Ct. at 1965 (*quoting* Papasan v. Allain, 478 U.S. 265, 286 (1986)). Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1964-65 *(internal citations omitted)*.

### III. Discussion

**A.  The Americans with Disabilities Act of 2008**

The Court first considers whether the Americans with Disabilities Act of 2008 is applicable to Plaintiff's cause of action. The ADA was amended effective January 1, 2009. *See* ADA Amendments Act of 2008 ("ADAAA"), Pub.L.No. 110-325, 122 Stat. 3553. The 2008 Amendments are largely favorable to claimants since the statutory definition of disability is to be construed "in favor of broad coverage of individuals ... to the maximum extent permitted" by the law. Feldman v. Law Enforcement Assocs. Corp., 779 F.Supp.2d 472 (E.D.N.C. March 10, 2011) (*quoting* 42 U.S.C. §12102(4)(A)). Plaintiff seeks retroactive application of the ADAAA while Getrag asserts

that retroactive application is contrary to law.

In an unpublished opinion, the Fourth Circuit recently held, "Congress did not expressly intend for these changes to apply retroactively, and so we must decide this appeal based on the law in place prior to the amendments." Schneider v. Giant of Md., LLC, 389 Fed. Appx. 263, 267 n. 3 (4th Cir.2010) (*unpublished*) (*citing* Landgraf v. USA Film Prods., 511 U.S. 244, 270-71 (1994); Shin v. Univ. of Md. Med. Sys. Corp., 369 Fed. Appx. 472, 479 n. 14 (4th Cir.2010) (*unpublished*) (agreeing with other circuits holding that the 2008 ADA amendments are not retroactive); *see also* Smith v. Bank of Stanly, 2011 WL 627625, *27 n. 43 (February 11, 2011 M.D.N.C.) (to the extent the statutory definition of disability was affected by the 2008 Amendment, amendment does not apply retroactively); Feldman v. Law Enforcement Assocs. Corp., 779 F.Supp.2d 472 (E.D.N.C. March 10, 2011).

Under the ADA, the date of the alleged adverse employment decision is the relevant date for determining disability. *See* Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 470 n. 3 (4th Cir.2002)(*citing* EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 379 (4th Cir.2000); Griffith v. Wal-Mart Stores, Inc., 135 F.3d 376, 380 (6th Cir.1998)). The ADAAA took effect just prior to the commencement of this lawsuit but more than a year after Getrag's termination of Brewington in July 2007. Because the conduct challenged by Brewington occurred prior to January 1, 2009, the Court's analysis is governed by the former version of the ADA.[3] *See* Smith v. Bank of Stanley, 2011 WL 627625 (applying pre-2009 ADA scheme where lawsuit commenced in 2009 but adverse employment actions occurred in 2008).

---

[3] As explained herein, Brewington's cause of action does not survive Rule 12(b)(6) under either version of the Act because he does not allege facts that could support a reasonable inference of discrimination.

5

## B. Rule 12(b)(6) Analysis

"[I]n a typical discharge case brought under the ADA, a plaintiff must prove by a preponderance of the evidence that (1) []he was in the protected class [*i.e.*, satisfies the statutory definitions of qualified individual with a disability]; (2) []he was discharged; (3) at the time of the discharge, []he was performing [his] job at a level that met [his] employer's legitimate expectations; and (4) [his] discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination."[4] Ennis v. Nat'l Assoc. of Business and Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir.2008) *(internal citations omitted)*.

### 1. ADA's Definition of "Disability"

The ADA prohibits discrimination by employers who are covered by the Act against qualified individuals with disabilities. 42 U.S.C. §12112(a)(2011). Under the ADA, a qualified individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8). For purposes of the ADA, "disability" means:

> *(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual*;
> (B) a record of such impairment; or
> (C) being regarded as having such an impairment ....

42 U.S.C. § 12102(2)(2011) (same as pre-2009 version of ADA) (*emphasis added*).

"An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter

---

[4] For purposes of resolving the instant motion, the Court presumes that Brewington sufficiently alleges that he was performing his job at a level that met his employer's legitimate expectations at the time of discharge. Even so, there is no plausible claim of disability-related discrimination.

because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. §12102(3)(A). "The fact that an employer is aware of an employee's impairment, without more, is "insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action."" Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 703 (4th Cir.2001) (*quoting* Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir.1996)).

As a threshold matter, a plaintiff must prove he is disabled under the Act. *See* Saunders v. Baltimore County, Maryland, 163 F.Supp.2d 564, 567 (D.Md. September 19, 2001) (*citing* Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 387 (4th Cir.2001)). "This threshold inquiry requires an individualized analysis of the effects of the claimed impairment on the individual's life activities." Heisler v. Metropolitan Council, 339 F.3d 622, 627 (8th Cir. 2003) (*citing* Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999)); *but see* 29 C.F.R. §1630.2(j)(1)(rules of construction governing "substantially limits" under the ADAAA, as amended).

The decision whether a plaintiff is disabled under the ADA is a question of law for the court, not a question of fact for the jury. *See* Feldman, 779 F.Supp.2d 471 (*quoting* Rose v. Home Depot USA, Inc., 186 F.Supp.2d 595, 608 (D.Md.2002); Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir.2001)(Rehabilitation Act case).

Based upon Brewington's Complaint, and the absence of any allegation that Getrag erroneously regarded him as disabled, Brewington does not appear to allege disability under §12102(2)(C). *See* Cartwright v. Lockheed Martin Utility Servs., 40 Fed. Appx. 147, 2002 WL 1461753, *4 n.3 (6th Cir. 2002) ("regarded as" theory of disability deemed waived on appeal because it was not asserted at the trial level). Thus, the Court's disability analysis focuses on the first statutory definition criteria – facts in support of a physical or mental impairment that substantially

limits one or more of Plaintiff's major life activities.

### a. Major Life Activity of Working, 42 U.S.C. § 12102(2)(A)

"[A] plaintiff's significant restriction in a major life activity must be 'compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.'" EEOC v. Sara Lee Corp., 237 F.3d 349, 352-53 (4th Cir.2001) (*internal citation omitted*). "In order to be substantially limited in the major life activity of working, one's impairment must preclude him from more than one type of job, a specialized job, or a particular job of choice.'" Pollard, 281 F.3d at 471(*quoting* Sutton, 527 U.S. at 491-92); *see also* Halperin, 128 F.3d at 199 (stating, "the inability to perform a particular job does not constitute a substantial limitation. . . . Rather, 'substantially limits' means that the impairment must 'significantly restrict' an individual's ability to perform a wide range of jobs."). Here, Plaintiff does not even allege that he was prevented from his impairment from working in a class of jobs or broad range of jobs. *See e.g.*, Edwards v. Manual Woodworkers & Weavers, No. 4:98cv183 (W.D.N.C. March 5, 1999) (Thornburg, J.) (granting motion to dismiss where Plaintiff was not substantially limited in the major life activity of working because she admitted she was able to perform her job) (*citing* Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196-97 (4th Cir.1997), *overruled on other grounds by*, Baird v. Rose, 192 F.3d 462 (4th Cir.1999)). In fact, Plaintiff believed that he could still work in his previous area of employment at Getrag. Since Plaintiff's alleged facts make clear that he was not prevented from working in a class of jobs or even a broad range of jobs, he has not alleged facts showing he was substantially limited in his ability to work.

### b. Major Life Activity of Sleeping, 42 U.S.C. § 12102(2)(A)

In an abundance of caution, the Court also considered whether Brewington's sleep apnea diagnosis might be an area ordinarily recognized as a substantial limitation of the major life activity of sleeping. A review of other sleep apnea cases brought under the ADA reveals that is not the case. *See e.g.*, Boerst v. General Mills Operations, Inc., 25 Fed. Appx. 403, 407 (6th Cir. 2002) (finding that "[g]etting between two and four hours of sleep a night, while inconvenient, simply lacks the kind of severity we require of an ailment before we will say that the ailment qualifies as a substantial limitation under the ADA."); Keyes v. Catholic Charities of the Archdiocese of Philadelphia, 415 Fed. Appx. 405, 2011 WL 713640 (3rd Cir.2011) (summary judgment disposition holding that employee's sleep apnea did not substantially limit his major life activity of sleeping); Rossi v. Alcoa, Inc., 129 Fed. Appx. 154 (6th Cir.2005)(*unpublished*) (employee's testimony that he slept well when he took his medication established that he was not substantially limited by his sleep apnea, thus precluding a finding of a disability at summary judgment). Accordingly, Plaintiff's conclusory statement that he suffers from sleep apnea is not enough to nudge his claim beyond Rule 12(b)(6). *See* Falso v. Ablest Staffing Servs., 533 F.Supp.2d 332, 336 (W.D.N.Y. February 11, 2008) (assertion of disability "is a conclusion of law which cannot defeat a motion to dismiss.")

### c. Brewington's Complaint Fails To Satisfy Threshold Of ADA Disability

Plaintiff does not allege facts which demonstrate that he was a member of a protected class by virtue of a disability. Brewington does not allege facts that explain in any meaningful way how his sleep apnea or other related conditions substantially limit him in the performance of any major life activity, that any record of such an impairment exists, or that Getrag regarded him as having such an impairment. "An impairment cannot be demonstrated merely through

evidence of a medical diagnosis; rather the ADA "requires those claiming the Act's protection ... to prove a disability by offering evidence that extent of limitation [caused by their impairment] in terms of their own experience ... is substantial."" Falso, 533 F.Supp.2d 332 (W.D.N.Y. February 11, 2008) (applying pre-Amendment version of ADA, holding that facts alleged by *pro se* plaintiff were not plausible where plaintiff alleged he had a learning disability but failed to allege other specific facts in support of statutory definition of disability) (*quoting* Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002)).

### 2. Brewington's Factual Allegations Do Not Support A Reasonable Inference of Discrimination

Viewing the facts in the light most favorable to Plaintiff, Brewington's allegations do not "raise[] a right to relief above the speculative level." Twombly, 127 S.Ct. at 1974; Lorah v. Tetra Tech, Inc., 541 F.Supp.2d 629, 635 (D. Delaware March 31, 2008); Ennis, 53 F.3d at 62 (summary judgment disposition rejecting plaintiff's claim of discriminatory motive in absence of factual support).

Here, Brewington alleges he was hired on as a permanent employee by Getrag *after* Getrag had been made aware that Brewington had sleep apnea. In addition, Brewinton alleges that prior to receiving an offer of permanent employment from Getrag, he blacked out at work and was hospitalized. According to the Complaint, Getrag's staff assisted Brewington by taking him to the hospital for evaluation. Significantly, Plaintiff does not contend that he was treated any differently from any other Getrag personnel after notifying Getrag of his diagnosis or after his black out at work. Indeed, Getrag's subsequent decision to hire Brewington notwithstanding the sleep apnea diagnosis belies Brewington's claim of unlawful discrimination. *See e.g.*, Lorah, 541 F.Supp.2d at 635 (granting Rule 12(b)(6) motion where plaintiff employee alleged she was

hired after informing employer she suffered from asthma); Falso, 533 F.Supp.2d at 336 (plaintiff's ADA claim dismissed for failure to demonstrate disability-related discrimination where complaint alleged he was hired *after* notifying defendant of learning disability and attempted to place plaintiff in at least two assignments).

The same is true for the length of time Brewington was employed by Getrag. Accepting Brewington's factual allegations as true, Brewington must have been in Getrag's employ for some three (3) years without experiencing any discriminatory conduct by Defendant Getrag. To the contrary, Brewington plainly states, Getrag permitted Brewington to work overtime – Getrag "had no problem with [his] medical condition and still allowed [him] to work as much overtime as [he] could." (Compl. ¶7)

Similarly, Plaintiff alleges that he was terminated at the same time as a non-disabled employee, who, presumably, was thought to be sleeping on the job by the supervisor. (Compl. ¶15) Brewington explains in the Complaint how he was to be made an example of by his employer. (Compl. ¶15) There is no mention of sleep apnea or an alleged disability playing any part in Getrag's decision to terminate Brewington. Regardless of the sleep apnea diagnosis, If Getrag's position is accurate, sleeping on the job hardly needs defending as a basis for termination. In various contexts, "courts have repeatedly approved of ADA-challenged discharges for falling asleep at work, particularly in safety-sensitive positions." *See* Grubb v. Southwest Airlines, 296 Fed. Appx. 383, 2008 WL 4538313, * (5th Cir.2008) (flight instructor with sleep apnea unsuccessfully sought ADA reasonable accomodation by way of different shift assignment) (*citing* Leonberger v. Martin Marietta Materials, Inc., 231 F.3d 396 (7th Cir.2000) (adverse employment action not a product of discriminatory animus; employee with sleep apnea failed to rebut employer's proffered nondiscriminatory reason for termination – partially due to

fact that employee had been observed either sleeping or "nodding off" on the job, including while heavy industrial equipment was in operation)). While the Complaint does not make clear whether similar safety concerns would have been present given Brewington's position at Getrag, the Complaint, as a whole, fails to allege that Brewington's discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.

## IV. Order

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Set Date for Trial (Document #18) is rendered **MOOT** and **DENIED** as such.

Signed: October 12, 2011

Richard L. Voorhees
United States District Judge